2013 OK CR 2

**Charles Lee LOGAN, Petitioner,**

v.

**STATE of Oklahoma, Respondent.**

**No. PC–2012–108.**

Court of Criminal Appeals of Oklahoma.

Jan. 11, 2013.

As Corrected Feb. 28, 2013.

Charles Lee Logan, Defendant Pro Se.

Aaron Etherington, Assistant District Attorney, Oklahoma City, OK, Attorney for State.

No Response Necessary.

**OPINION VACATING DISTRICT COURT'S DENIAL OF POST–CONVICTION RELIEF AND REMANDING FOR FURTHER PROCEEDINGS**

SMITH, Vice Presiding Judge.

¶ 1 Petitioner Charles Lee Logan appeals to this Court from an order of the District Court of Oklahoma County denying his Application for Post–Conviction Relief in Case No. CF–2008–6242. Logan was convicted by a jury of Robbery with a Firearm, AFCF, 21 O.S.2001, § 801 (Count 1) and Robbery in the First Degree, AFCF, 21 O.S.2001, § 791 (Count 2).[1] Logan was sentenced to imprisonment for life on Count 1 and imprisonment for 40 years on Count 2. The district court, the Honorable Virgil C. Black, ordered that the sentences be served consecutively. This Court affirmed the judgments and sentences in *Logan v. State*, F–2009–656 (Okl.Cr., June 29, 2010) (opinion not for publication).[2]

¶ 2 On June 10, 2011, Logan filed an "Application for Post–Conviction Relief" ("Application") in the District Court. On June 23, 2011, the State filed a comprehensive "Response to Application for Post–Conviction Relief" ("Response"). On August 3, 2011, the Honorable Donald L. Deason, District Judge ("the District Court"), denied Logan's Application.[3] It is from the District Court's

1. In its "Order Denying Application for Post–Conviction Relief," the District Court incorrectly states that Logan was convicted of "Assault with Intent to Commit a Felony, AFCF" in Count 2. Although Count 2 originally charged Logan with this crime, this count was later amended, and the record clearly reflects that Logan's conviction in Count 2 is for First–Degree Robbery.

2. On direct appeal, Logan raised one proposition of error: that his multiple convictions and sentences for a single criminal act violate 21 O.S. 2001, § 11 and his federal and state constitutional protections against Double Jeopardy.

3. Logan's *pro se* Application for Post–Conviction Relief contains seven propositions of error and is 23 pages long. The State's Response is 20 pages long and suggests that Logan's seven *pro se* claims can be understood as asserting the following six arguments: 1) he was subjected to an illegal search and seizure *where police searched his home without a warrant and arrested him without probable cause and without a warrant* (emphasis added); 2) he was denied due process of law because of a suggestive and/or unreliable pre-trial identification; 3) he was denied due process of law by the denial of an opportunity to present evidence to the investigating detective and was improperly charged with the crime of robbery; 4) the State failed to disclose exculpatory evidence, in violation of *Brady v. Maryland*; 5) he received ineffective assistance of trial counsel; and 6) appellate counsel was ineffective due to the failure to raise the above claims on direct appeal. In its 3–page "Order Denying Application for Post–Conviction Relief," the District Court adopts the State's version of Logan's claims, maintaining that Logan asserted six propositions of error and listing the same six arguments listed in the State's Response—though the District Court leaves out the italicized material within the preceding sentence. This Court finds that this list is a fair summary of Logan's original post-conviction claims, which are overlapping to some degree, except that Logan did not actually make a *Brady* claim, and he did clearly assert that some of the evidence used against him at trial was the result of an illegal search and seizure on the night he was arrested.

order denying relief that Logan appeals.[4]

¶3 Post-conviction review provides petitioners with very limited grounds upon which to base a collateral attack on their judgments. 22 O.S.2001, § 1086. Issues that were previously raised and ruled upon by this Court are procedurally barred from further review under the doctrine of *res judicata;* and issues that were not raised previously on direct appeal, but which could have been raised, are waived for further review. *See* 22 O.S.2001, § 1086; *King v. State,* 2001 OK CR 22, ¶4, 29 P.3d 1089, 1090; *Webb v. State,* 1992 OK CR 38, ¶6, 835 P.2d 115, 116, *overruled on other grounds, Neill v. State,* 1997 OK CR 41, ¶7 n. 2, 943 P.2d 145, 148 n. 2. Post-conviction review was neither designed nor intended to provide applicants another direct appeal. *Cf. Coddington v. State,* 2011 OK CR 21, ¶2, 259 P.3d 833, 835 ("The post-conviction process is not a second appeal.").

¶4 In his post-conviction appeal and attached brief, Logan raises six propositions: (1) he was subjected to an illegal search and seizure, where police searched his home without a warrant and arrested him without probable cause and without a warrant; (2) evidence used against him was the result of an illegal search and seizure and should have been suppressed; (3) probable cause did not exist to justify his arrest or to charge him with robbery; (4) he was subjected to a suggestive/unreliable pre-trial identification; (5) trial counsel was ineffective in failing to adequately investigate his case, failing to object to evidence at trial, and failing to raise issues now challenged; and (6) appellate counsel was ineffective for failing to raise the above claims on direct appeal. This Court finds that Logan has waived consideration of his first five grounds for relief, as these issues were not, but could have been, raised on direct appeal.

¶5 As for his sixth ground for relief, Logan claims that appellate counsel was ineffective for failing to raise on direct appeal the claims he now raises in this post-conviction appeal. Claims of ineffective assistance of appellate counsel may be raised for the first time on post-conviction, because it is usually a petitioner's first opportunity to allege and argue the issue. Post-conviction claims of ineffective assistance of appellate counsel are reviewed under the standard for ineffective assistance of counsel set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Smith v. Robbins,* 528 U.S. 259, 289, 120 S.Ct. 746, 765, 145 L.Ed.2d 756 (2000) ("[Petitioner] must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel."); *Coddington,* 2011 OK CR 21, ¶3, 259 P.3d at 835; *Davis v. State,* 2005 OK CR 21, ¶7, 123 P.3d 243, 246. Under *Strickland,* a petitioner must show both (1) deficient performance, by demonstrating that his counsel's conduct was objectively unreasonable, and (2) resulting prejudice, by demonstrating a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding (in this case the appeal) would have been different. *Strickland,* 466 U.S. at 687–89, 104 S.Ct. at 2064–66. And we recognize that "[a] court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter,* — U.S. ——, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011) (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065).

¶6 In reviewing a claim of ineffective assistance of appellate counsel under *Strickland,* a court must look to the merits of the issue(s) that appellate counsel failed to raise.[5] *See Malicoat v. Mullin,* 426 F.3d 1241, 1249 (10th Cir.2005) ("[I]n certain cir-

---

4. This Court granted Logan an out-of-time post-conviction appeal. *Logan v. State,* PC–20111074 (Okl.Cr., January 13, 2012).

5. Of course, if appellate counsel actually *did* raise the issue (on direct appeal) that is now being re-asserted on post-conviction (within a

claim of ineffective assistance of appellate counsel), any rejection of the issue on direct appeal would make the issue *res judicata;* and the post-conviction re-assertion of the issue (within a claim of appellate ineffective assistance) should be rejected on this basis.

cumstances, appellate counsel's omission of an issue may constitute ineffective assistance under *Strickland*. In analyzing such claims, the court must consider the merits of the omitted issue." (citing *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765–66)); *Cargle v. Mullin*, 317 F.3d 1196, 1205 (10th Cir.2003) ("The very focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the merits of omitted issues, and no test that ignores the merits of the omitted claim in conducting its ineffective assistance of appellate counsel analysis comports with federal law."). In the context of ineffective assistance of appellate counsel claims, only an examination of the merits of any omitted issues will reveal whether appellate counsel's performance was deficient (due to failing to raise the omitted issue(s)) and also whether the failure to raise the omitted issue(s) on appeal prejudiced the defendant, *i.e.*, whether there is a reasonable probability that raising the omitted issue(s) would have resulted in a different outcome in the defendant's direct appeal (*e.g.*, a reversal, new trial, new sentencing proceeding, or sentence modification).

¶ 7 This Court emphasizes that it will often be unnecessary to address both the performance prong and the prejudice prong in this context. As with any ineffective assistance·claim, an ineffective assistance of appellate counsel claim can often be resolved by a finding that the defendant has failed to establish prejudice, without even addressing the attorney's performance. Since the prejudice analysis is often more straight-forward, it makes sense to address this issue first. *See Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *Bland v. State*, 2000 OK CR 11, ¶ 113, 4 P.3d, 702, 731 ("When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed."). Of course, determining prejudice in this context requires examining the merits of any omitted issues. And the prejudice inquiry is about whether the defendant has established that there is a reasonable probability that the result of the appeal would have

been different if an omitted issue(s) had been appealed originally, *i.e.*, that a claim (or claims) now asserted would likely have prevailed if it (they) had been raised on direct appeal. This Court notes that if the State can show that a claim now asserted (as an example of ineffective appellate assistance) would have been properly *rejected* on direct appeal, then the postconviction applicant will be unable to show prejudice, and the assertion of ineffective appellate assistance for failing to raise that claim should be rejected accordingly.

¶ 8 If a defendant can show prejudice from the omission of an issue(s) on appeal, the appellate attorney's performance must also be evaluated. Attorney performance in this context is judged based upon the relative merit of the omitted issue(s). In *Smith v. Robbins*, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000), the Supreme Court specifically recognized the viability of claims of ineffective assistance of appellate counsel alleging that even though an appellate attorney appealed certain issues, the attorney "failed to raise a particular claim" that the defendant maintains should have been appealed. *Id.* at 287–88, 120 S.Ct. at 765. The *Robbins* Court emphasized that even though appellate attorneys are *not* required to raise every arguable issue or every possible "nonfrivolous claim" (not even those specifically requested by the defendant)—and *are* expected to select the claims most likely to succeed on appeal—"it is still possible to bring a *Strickland* claim based on [appellate] counsel's failure to raise a particular claim." *Id.* at 288, 120 S.Ct. at 765 (citing *Jones v. Barnes*, 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983)). The *Robbins* Court also recognized that the *relative merit* of the omitted issue(s)—in relation to any appealed issues—must be evaluated in order to determine whether appellate counsel's performance was adequate. *See id.* at 288, 120 S.Ct. at 765–66.

¶ 9 There are essentially three different categories of relative merit in this context: (1) appellate claims that are "plainly meritorious" or "dead-bang winners," (2) appellate claims that are meritless, and (3) appellate

claims that have merit, but are not plainly or obviously meritorious.

¶ 10 Claims that are "plainly meritorious" or that are (as the Tenth Circuit Court of Appeals has sometimes described them) "dead-bang winners" are appellate claims that are so strong and so obviously deserving of appellate relief that they directly establish both inadequate performance and prejudice.[6] If examination of an omitted issue shows that it was "so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance." *Cargle*, 317 F.3d at 1202. Issues that are "plainly meritorious" will likewise directly establish prejudice, because plainly meritorious claims (and "dead-bang winners") would be expected to succeed on appeal. Consequently, plainly meritorious claims will directly establish ineffective assistance of appellate counsel and require some form of relief.

¶ 11 The analysis of claims that are "meritless" is similarly straightforward. If the reviewing court determines than an omitted issue is "meritless," *i.e.*, there is not even a reasonable probability that the claim would have succeeded on appeal, this finding compels the further conclusion that appellate counsel was *not* ineffective regarding that issue. The omission of a meritless claim, *i.e.*, a claim that was destined to lose, cannot constitute deficient performance; nor can it

have been prejudicial. *Id.; see also Hatch v. State*, 1983 OK CR 47, ¶ 9, 662 P.2d 1377, 1381 ("Failure to press meritless claims do[es] not constitute ineffective assistance of counsel."). An assertion of ineffective assistance of appellate counsel based upon the failure to raise a meritless claim (or meritless claims) can be summarily rejected.

¶ 12 The third category of claims is more tricky. Appellate claims that are found to have merit, because there is a reasonable probability that the claim would have resulted in a favorable result on appeal if it had been raised, *but* where this conclusion is not obvious or "plain," *i.e.*, claims where the merit analysis is a "close call," require a more complex analysis. In such cases the finding that the claim has merit likewise establishes prejudice from the failure to raise the omitted claim, and the question becomes whether the appellate attorney's performance (in failing to raise the omitted claim) was objectively unreasonable.

¶ 13 The Supreme Court has emphasized that in this context, as with all ineffective assistance of counsel claims, "it is difficult to demonstrate that counsel was incompetent." *Robbins*, 528 U.S. at 288, 120 S.Ct. at 765. The *Robbins* Court further noted: "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting with approval *Gray v. Greer*, 800 F.2d 644, 646

6. The Tenth Circuit Court of Appeals began using the phrase "dead-bang winner" in this context in 1995, in *United States v. Cook*, 45 F.3d 388 (10th Cir.1995), where it was defined as "an issue which was obvious from the trial record ... *and* one which would have resulted in a reversal on appeal." *Id.* at 395 (emphasis in original). The *Cook* court wrote: "By omitting an issue under these circumstances, counsel's performance is objectively unreasonable because the omitted issue is obvious from the trial record. Additionally, the omission prejudices the defendant because had counsel raised the issue, the defendant would have obtained a reversal on appeal." *Id.* The Tenth Circuit later ruled, speaking *en banc* in its decision in *Neill v. Gibson*, 278 F.3d 1044 (10th Cir.2001), that a claim could be found to be a "dead-bang winner" if the defendant could show "a reasonable probability that the omitted claim would have resulted in a reversal on appeal" and expressly disavowed the *Cook* requirement that the defendant show he definitely

"would have" obtained a reversal on appeal if the claim had been raised. *See id.* at 1057 n. 5 (relying on *Strickland*). More recently, the Tenth Circuit has again used the term "dead-bang winner" in the more narrow sense, requiring a finding that the omitted claim "would have" resulted in a reversal on appeal. *See e.g., United States v. Challoner*, 583 F.3d 745, 749 (10th Cir.2009) (quoting *Cook*, 45 F.3d at 395). *See also Cargle*, 317 F.3d at 1202 n. 4 (interpreting *Neill* as holding that while omission of a "dead bang winner" claim is sufficient to establish ineffective assistance of appellate counsel, it is not *necessary* to show that an omitted claim was a "dead bang winner" in order to prevail on ineffective assistance of appellate counsel claim). Whether the term used is "dead-bang winner" or "plainly meritorious," this Court finds that these are the kind of appellate claims that are so clearly "winners" that the failure to raise them directly establishes ineffective assistance of appellate counsel.

(7th Cir.1986)). The Tenth Circuit Court of Appeals has likewise stated: "If the omitted issue has merit, but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission." *Cargle*, 317 F.3d at 1202. Hence the reviewing court must consider the relative merit of the omitted issue(s), in relation to any appealed issues, in order to determine whether appellate counsel's performance was adequate, applying a "strong presumption" that the performance was adequate. *See Richter*, —— U.S. ——, 131 S.Ct. at 787. Such claims will sometimes require relief—but usually not.

¶ 14 Logically, this same approach must also apply in the district court, when these courts analyze a (non-capital) post-conviction claim of ineffective assistance of appellate counsel in the first instance. This Court notes that the procedures and standards for addressing post-conviction claims in *non-capital* cases, under The Post–Conviction Procedure Act, *see* 22 O.S.2011, §§ 1080–88, are not exactly the same as the procedures and standards for addressing postconviction claims in *capital cases*, where a defendant has been sentenced to death on one or more counts, *see* 22 O.S.2011, § 1089 (procedures and standards for post-conviction claims in

capital cases, including filing of original application in Court of Criminal Appeals).[7]

¶ 15 In the current (non-capital) case, the District Court's Order denying postconviction relief does not address the merits of any of the issues raised in Logan's Post–Conviction Application, not even his claim of ineffective assistance of appellate counsel. In its Response to Logan's Application, the State concedes that Logan's ineffective assistance of appellate counsel claim, unlike his other claims, is "viable for consideration."[8] The State's Response also correctly invokes *Strickland* as establishing the standard by which such claims must be evaluated and correctly summarizes applicable law for evaluating appellate counsel's performance in a way that is appropriately deferential. After addressing the substantive merit of all the claims raised by Logan in his Application— arguing that Logan's post-conviction claims are both waived *and* non-meritorious—the State argues in its Response that because all of Logan's post-conviction claims lack *merit*, Logan could not have been "prejudiced" by his appellate counsel's failure to raise these claims.[9]

¶ 16 The State likewise addresses the "performance" prong of Logan's appellate ineffectiveness claim, by comparing the single claim raised by appellate counsel on direct appeal with the claims that Logan now asserts his counsel *should* have raised.[10] Thus the

---

7. *See also* 22 O.S.2011, § 1089(E) ("All matters not specifically governed by the provisions of this [capital post-conviction] section shall be subject to the provisions of the Post–Conviction Procedure Act. If the provisions of this act conflict with the provisions of the Post–Conviction Procedure Act, the provisions of this act shall govern."); *Compare* Rules 5.1–5.6, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22 Ch. 18, App. (2012) (post-conviction procedures in non-capital cases), *with* Rule 9.1, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22 Ch. 18, App. (2012) (post-conviction procedures in capital cases).

8. On p. 4 of its Response to Logan's Application, the State writes: "While the allegation of ineffective assistance of appellate counsel is viable for consideration, Petitioner's remaining propositions of error are not proper for postconviction review."

9. On p. 19 of its Response, the State writes: "Petitioner cannot demonstrate resulting preju-

dice on these allegations. As previously discussed, Petitioner's underlying substantive claims are without merit. As such, it must follow that Petitioner cannot meet his burden of establishing that the results on appeal would have been more favorable had they been presented to the Court."

10. On p. 19 of its Response, the State writes:
Any failure of counsel to raise the issues now presented by Petitioner on appeal does not render [appellate counsel's] performance objectively unreasonable, as counsel is not required to raise every conceivable argument for review. The appellate brief submitted on Petitioner's behalf was well written and supported by citation to the record and applicable legal authority. The claim raised on direct appeal presented a far more viable challenge to the convictions and sentences than those now presented by Petitioner.... Consequently, Petitioner cannot meet his burden of demonstrating objectively unreasonable performance by appellate counsel for failing to present these arguments on appeal.

State's Response does the substantive merits analysis that this Order mandates must be done.

¶ 17 Unfortunately, the District Court's 3–page Order does not reflect that it too did this analysis. Although the Order correctly recites the law applicable to claims of appellate ineffective assistance—by copying text directly from pp. 18–19 of the State's Response—the Order totally fails to *apply* this law to the claims at issue.[11] After reciting the law at issue, the District Court's entire "application" of this law, as well as its conclusion regarding Logan's multi-prong appellate ineffectiveness claim, is as follows: "Petitioner has failed to establish constitutionally deficient performance by appellate counsel, and therefore does not meet his burden of demonstrating objectively unreasonable performance of appellate counsel." This circular and conclusory sentence simply does not demonstrate that the District Court has actually undertaken and completed the legal analysis that must be done. In this regard the District Court's Order is not merely summary or brief, it is incomplete. Although the Order denies Logan relief, the Order does not reflect that the District Court completed the legal analysis that must be done.

¶ 18 Furthermore, while the District Court's Order refers to *Strickland* and some of its progeny, it fails to acknowledge that an examination of the merits of any omitted issue is a necessary component of resolving a claim of ineffective assistance of appellate counsel, and it fails to address any of the specific claims of ineffective appellate assistance that are at issue in Logan's case. Consequently, this Court cannot be sure that the District Court has actually *made* the necessary findings and conclusions that must be made regarding Logan's ineffective assistance of appellate counsel claim, in order to summarily dispose of his post-conviction application. *See* 22 O.S.2011, § 1083(c) ("The court may grant a motion by either party for summary disposition of the [post-conviction] application when it appears from the response and pleadings that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. An order disposing of an application without a hearing shall state the court's findings and conclusions regarding the issues presented."); *see also* Rule 5.2(C)(6)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22 Ch. 18, App. (2012) (district court denial of post-conviction relief must include "Findings of Fact and Conclusions of Law entered by the District Court, setting out the specific portions of the record and transcripts considered by the District Court in reaching its decision or setting forth whether the decision was based on the pleadings presented").[12] Hence this case must be remanded to the district court.

¶ 19 This Court recognizes that non-capital post-conviction applications, which are typically filed *pro se,* can be quite burdensome both to the State and to the district courts. Today's Opinion is not intended to impose on either the State or the district courts of Oklahoma any new or unreasonable burden, beyond that which already exists under the Post–Conviction Procedure Act and current law regarding claims of ineffective assistance of appellate counsel. Rather, this Opinion is intended to clarify the law in this arena and, in particular, the necessity of considering the

---

11. This Court is *not* suggesting that there is anything wrong with a district court adopting language, even word-for-word, from a filing by a party, as long as the adopted language is factually accurate and legally correct, and as long as it is clear that the district court has actually made any decision that is at issue. This Court likewise recognizes that there is nothing wrong with a district court ordering either of the parties in a post-conviction case to draft the court's order in the case, as long as the order appropriately reflects the court's analysis and decision on the issues at stake.

12. *See also* Rule 5.4(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22 Ch. 18, App. (2012):

The judge assigned to adjudicate the application for post-conviction relief shall prepare a detailed order setting out specific findings of fact and conclusions of law on each proposition for relief presented in the application. The order shall also specify the pleadings, documents, exhibits, specific portions of the original record and transcripts, considered in adjudicating the application, which shall then become a part of the record on appeal as defined by Rule 5.2(C)(6).

merits of legal claims that are asserted within post-conviction claims of ineffective appellate assistance, *i.e.*, of considering whether any of the claims that the post-conviction applicant asserts "should have been raised" on direct appeal are, in fact, meritorious. This analysis should be conducted according to the standards set forth herein.

¶ 20 This Court emphasizes that it is remanding Logan's case not because it is clear that he is entitled to post-conviction relief or even that he is entitled to an evidentiary hearing on his Application, but rather because it is unclear from the District Court's Order whether that court, in fact, undertook and completed the legal analysis that is at issue. This Court also takes this opportunity to review some of the governing law that must be followed in this context.

¶ 21 Under Oklahoma's Post–Conviction Procedure Act, the district court cannot summarily dispose of a (non-capital) application for post-conviction relief if the application raises "a genuine issue of material fact," which prevents a finding that either party is entitled to judgment as a matter of law. *See* 22 O.S.2011, § 1083(c); *see also* 22 O.S.2011, § 1083(b) ("Disposition on the pleadings and record is not proper if there exists a material issue of fact.").[13] An issue is "material" in this context if it is one that could be determinative on a claim raised in the postconviction application, *i.e.*, a fact that could potentially help the applicant establish that he or she was prejudiced by appellate counsel's unreasonable failure to raise a particular claim now raised. Disputed issues of

fact within claims that were meritless or could not have prevailed on direct appeal anyway are *not* genuine issues of material fact.

¶ 22 If a genuine issue of material fact exists in the case, *i.e.*, if there is an actual dispute about a material issue of fact in the case, the district court is required to conduct an evidentiary hearing on the post-conviction application. *See* 22 O.S.2011, § 1084 ("If an application cannot be disposed of on the pleadings and record, or there exists a material issue of fact, the court shall conduct an evidentiary hearing at which time a record shall be made and preserved."). At such an evidentiary hearing, "[t]he court may receive proof by affidavits, depositions, oral testimony, or other evidence and may order the [postconviction] applicant brought before it for the hearing." *Id.* At the conclusion of such an evidentiary hearing, the district court must make specific findings of fact regarding any material issues of fact that are in dispute and must also state its specific conclusion(s) regarding each claim raised in the post-conviction application. *See id.* ("The court shall make specific findings of fact, and state expressly its conclusions of law, relating to each issue presented. This order is a final judgment."); *see also* Rule 5.4(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22 Ch. 18, App. (2012) (quoted *supra* in note 12).

¶ 23 This Court notes that post-conviction applications that assert merely conclusory, unprovable, or unspecific claims of ineffective assistance of appellate counsel do

---

**13.** This Court notes that the limited record currently before this Court suggests that there *may* be a "genuine issue of material fact" at issue in this case—regarding Logan's sworn assertion in his verified Application that the police entry into the apartment where he was staying, subsequent arrest of him, search of the apartment, and seizure of evidence from the apartment were unlawful because they were accomplished at night, without any warrant or adequate probable cause. Although the State argues in its Response that Logan's sister consented to the search of her apartment—where Logan was staying and where clothing connecting him to the Little Ceasar's robbery was discovered (citing to a transcript page that is not in the record currently before this Court)—an affidavit from Warr Acres Police Officer Darryl Goodman (which is attached to

the State's Response) states that on the night Logan was arrested, when officers first made contact at the apartment, "there were two subjects inside, the defendant, Charles Logan, and his nephew Tyree Coffey." The same affidavit states that Coffey is "the son of the listed vehicle owner," *i.e.*, the son of Logan's sister, whose car had been connected with a similar pizza-place robbery and which led police to her apartment. Hence it is unclear when and how any such "consent" from Logan's sister would have been given. This Court does *not* conclude that there is a genuine issue of material fact that must be resolved in this regard, but rather that the district court should carefully consider whether there is a genuine issue of material fact that is in dispute in this regard.

not raise a genuine issue of material fact about the adequacy of appellate counsel's representation of the applicant. Post-conviction applications must be accompanied by argument, some citation to relevant authority or legal norms, and specific factual averment(s), which support the specific claim(s) being made in the application. *See* 22 O.S. 2011, §§ 1080–83. Applications that do not meet these minimal requirements can be summarily disposed of by the district court, either with or without waiting for an answer from the State. *See* 22 O.S.2011, § 1081 (requirements for properly filing a verified application for postconviction relief); 22 O.S. 2011, § 1083 (requirements for summary disposition). It is not the job of the district court to comb the record or the law looking for support for the applicant's claims.

¶ 24 On the other hand, this Court recognizes that under the Post–Conviction Procedure Act, when the district court considers a post-conviction application, "the court shall take account of substance, regardless of defects of form." 22 O.S.2011, § 1083(a). We further note that "[i]f the application is not accompanied by the record of the proceedings challenged therein, the respondent shall file with its answer the record or portions thereof that are material to the questions raised in the application; or such records may be ordered by the court." [14] *Id.* In addition, if the district court finds that the assistance of counsel "is necessary to provide a fair determination of meritorious claims" in the post-conviction application, such counsel "shall be made available to the applicant." *See* 22O.S.2011, § 1082 (also discussing payment of court costs, expenses, and attorney fees for indigent applicants).

¶ 25 This Court concludes that the current case must be and hereby is remanded to the district court. The district court is instructed that it must determine, first, whether there are any genuine issues of material fact that must be resolved, through an evidentiary hearing, regarding Logan's claim of ineffective assistance of appellate counsel. If any such issues exist, an evidentiary hearing

shall be held, consistent with this Opinion and Oklahoma law. If the district court determines that Logan's post-conviction application can be resolved without such a hearing, the district court is instructed to ensure that its final order specifically addresses and makes findings regarding each of the assertions of ineffective assistance of appellate counsel that are raised in Logan's application.

**DECISION**

¶ 26 The order of the District Court of Oklahoma County denying Petitioner's Application for Post–Conviction Relief is **VACATED**. The case is **REMANDED** for further proceedings consistent with this Opinion. In accordance with Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2013), the **MANDATE** is **ORDERED** issued upon filing of this decision.

LEWIS, P.J., LUMPKIN, J., concur in part/dissent in part, C. JOHNSON and A. JOHNSON, JJ.: concur.

LUMPKIN, Judge: concur in part/dissent in part.

¶ 1 I agree that all post-conviction claims of ineffective assistance of appellate counsel are to be reviewed under the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Smith v. Robbins,* 528 U.S. 259, 289, 120 S.Ct. 746, 766, 145 L.Ed.2d 756 (2000). However, I disagree with the decision to vacate the denial of post-conviction relief and remand the case for further proceedings.

¶ 2 The procedure for appealing a final judgment under the Post–Conviction Procedure Act in non-capital cases is set forth in our court rules. *See* Rules 5.1 –5.6, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch. 18, App. (2012). If post-conviction relief is denied in the District Court, and a claim of ineffective assistance of appellate counsel is raised on appeal to this Court, it is Petitioner's burden on appeal to present evidence and argument showing that appellate

14. The district court "may also allow depositions and affidavits for good cause shown." 22 O.S. 2011, § 1083(a).

counsel was objectively unreasonable in failing to find and raise non-frivolous issues on appeal. It is not the duty of an appellate court to search the record for possible errors; it is a petitioner's duty to provide references to the record and the law, together with the evidence, that substantiates an allegation of a non-frivolous claim. *See Coddington v. State*, 2011 OK CR 17, ¶ 89, 254 P.3d 684, 716 (citing to Rule 3.5(A)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2010)); *Berget v. State*, 1995 OK CR 66, ¶ 30, 907 P.2d 1078, 1086; *Perez v. State*, 1980 OK CR 59, ¶ 11, 614 P.2d 1112, 1115. If Petitioner does not meet this burden, the presumption of counsel's competence is not rebutted and review of the underlying substantive claim is procedurally barred.

¶ 3 That is exactly the situation in the case before us. Petitioner, appealing *pro se*, offers argument and legal citations to support his claim. However, many of his legal citations are not relevant cases, he provides no legal analysis or factual support for his claims, and offers only self-serving statements for relief. He does not give us any reason to believe that the allegations of error warrant reversal, modification, or resentencing, or that their omission from his direct appeal was anything other than a strategic decision by appellate counsel made after thorough investigation of the law and facts relevant to the case. His allegations of ineffectiveness do not come close to meeting the rigorous standard for constitutionally deficient performance set forth in *Strickland*.

¶ 4 Based upon the record before us, I find Petitioner has not rebutted the presumption that appellate counsel acted as competent counsel, fully investigated the issues, and purposefully omitted the claims from the direct appeal. Therefore, as Petitioner has not established that appellate counsel's performance was deficient, his claim of ineffective assistance of appellate counsel is denied, his substantive claims remain procedurally barred and the order of the District Court denying the Application for Post–Conviction Relief should be affirmed.

¶ 5 Further, I also disagree with the majority's method of conducting the *Strickland* analysis. The majority has set forth and defined three categories of issues relevant to a discussion of ineffective assistance of appellate counsel. As laudable as this feat is, the meaning of the terms used by this Court is far from clear. This is evident from Footnote 6 which shows that not even the Tenth Circuit has clearly defined the type of issue which, if omitted from a direct appeal, warrants a finding of ineffective assistance of appellate counsel. As the majority notes, the Tenth Circuit used the phrase "dead-bang winner" as early as 1995 in *United States v. Cook*, 45 F.3d 388, 395 (10th Cir.1995) to describe an issue obvious from the record which would have resulted in a reversal on appeal. Subsequently in *Neill v. Gibson*, 278 F.3d 1044, 1057, fn. 5 (10th Cir.2001) the Tenth Circuit "disavowed" the use of the term stating, "[t]he en banc court, therefore, expressly disavows the use of the 'dead-bang winner' language to imply requiring a showing more onerous than a reasonable probability that the omitted claim would have resulted in a reversal on appeal." However, later in *United States v. Challoner*, 583 F.3d 745, 749 (10th Cir.2009), the Tenth Circuit returned to Cook and the use of the "dead-bang winner" term but without any reference to *Neill*. This seemingly inconsistent case law offers little guidance in our application of *Strickland*.

¶ 6 For that reason, I prefer to rely on the language of the United States Supreme Court. Of all of the many terms and definitions used by various courts to describe these types of issues which, if omitted from a direct appeal, factor in a discussion of the effectiveness of appellate counsel, only the term "frivolous" has been specifically and consistently defined. In *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989), citing to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) the U.S. Supreme Court said:

There, we stated that an appeal on a matter of law is frivolous where "[none] of the legal points [are] arguable on their merits." By logical extension, a complaint, containing as it does both factual allegations and legal conclusions, is frivolous

where it lacks an arguable basis either in law or in fact.

490 U.S. at 325, 109 S.Ct. at 1831–832 (internal citations omitted).

¶ 7 In applying *Strickland* to a claim of ineffective assistance of appellate counsel, Petitioner "must first show that his counsel was objectively unreasonable ... in failing to find arguable issues to appeal-that is, that counsel unreasonably failed to discover non-frivolous issues" and to raise them on appeal. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000) (internal citation omitted). *See also Jones v. Barnes,* 463 U.S. 745, 751–52, 103 S.Ct. 3308, 3313, 77 L.Ed.2d 987 (1983), (appellate counsel need not and should not raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal). It will be difficult for an appellant to demonstrate that counsel was incompetent. *Smith v. Robbins,* 528 U.S. at 288, 120 S.Ct. at 765–66. Petitioner must show that a particular non-frivolous issue was clearly stronger than issues that counsel did present. *Id.* "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id. quoting Gray v. Greer,* 800 F.2d 644, 646 (7th Cir.1986). If Petitioner succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to raise the omitted issues, he would have prevailed on his appeal. *Id.,* 528 U.S. at 285–86, 120 S.Ct. at 764. This is the standard of review we have used in the past and should continue to use in the future.

¶ 8 To a large extent, the majority cites to applicable law. However, they fail to actually apply that law and instead engage in an epistle to the trial court, which is a subjective analysis of what might have been if appellate counsel had taken a different course. This Court is bound by the law and evidence as developed in a particular case and is required to use objective criteria in the analysis and deciding of the case. Finality of judgment is an integral part of our judicial system. *Massaro v. United States,* 538 U.S. 500, 504, 123

S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *Sporn v. State,* 2006 OK CR 30, ¶ 6, 139 P.3d 953, 954. However, the majority's analysis creates a "trump card" or a "get out of jail free" card forcing review of procedurally barred claims through allegations of ineffective assistance of appellate counsel and defying all attempts at finality. *See Berget,* 1995 OK CR 66, ¶ 10, 907 P.2d at 1082–1083. This process does not comply with the procedures set out by the U.S. Supreme Court, which recognize appellate counsel must sort through various non-frivolous propositions of error in a given case and select only those that in counsel's professional and strategic analysis maximizes the likelihood of success on appeal. *Smith v. Robbins,* 528 U.S. at 288, 120 S.Ct. at 765. For "strategic choices made after thorough investigation of law and facts ... are virtually unchallengeable". *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. This Court should recognize and apply that reasoning which reflects an understanding of the challenges of appellate counsel.

¶ 9 Additionally, despite the Court's claim that the case is being remanded only because it is unclear whether the District Court undertook the appropriate legal analysis, the Court improperly attempts to direct that analysis. In footnote 13, while claiming that the record suggests that there may be a genuine issue of material fact regarding Petitioner's arrest and search of his apartment, but not concluding the actual existence of a genuine issue of material fact, the Court sets out argument and facts which it claims warrants the District Court to "carefully consider" the issue. Instructing the District Court on which issues to "carefully consider" is not within our appellate jurisdiction and renders the Court's directive in footnote 13 nothing more than advisory dicta. This Court does not issue advisory opinions. *See Canady v. Reynolds,* 1994 OK CR 54, ¶ 9, 880 P.2d 391, 394 ("this Court could not issue an opinion in any matter not at issue before it"). *See also Murphy v. State,* 2006 OK CR 3, ¶ 1, 127 P.3d 1158 ("this Court does not issue advisory opinions"); *Matter of L.N.,* 1980 OK CR 72, ¶ 4, 617 P.2d 239, 240 ("[a]n advisory opinion does not fall within the Court's original or statutory jurisdiction; neither does it come within its appellate review. To offer

advice in the form of an opinion would be to interfere with the responsibility of the trial court to exercise the powers confided to it"). As I have written before, this type of over-reaching corresponds to the analysis of Chief Justice Maura Corrigan which equates appellate judges to the philosopher kings of Plato's *Republic,* his treatise on the ideal state. *Textualism in Action: Judicial Restraint on the Michigan Supreme Court,* Texas Review of Law & Politics, Vol. 8, No. 2 (Spring 2004). As I stated in my dissent to *Seabolt v. State,* 2006 OK CR 50, 152 P.3d 235:

> I believe the problem has evolved due to appellate courts not being willing to exercise self-discipline and merely adjudicate the issues before them. Using this guise is a method of reaching out and touching issues either not presented or already decided in order to render a decision the court feels is needed. I realize this issue boils down to judicial philosophy and the limitations on judicial power. However, if we are to have a judicial system where judges and juries are tasked with the responsibility to make decisions on the facts of a case then appellate courts should honor those decisions. To do otherwise leaves the law unsettled and encourages repeated appeals hoping the biorhythmic chart for the court will allow success on a particular day.

2006 OK CR 50, ¶ 17, 152 P.3d at 244 (V.P.J. Lumpkin dissent).

¶ 10 The Court's opinion ventures far afield from a proper *Strickland* analysis of Petitioner's post-conviction claims, introduces new layers of complexity and unpredictability into an already daunting area of our jurisprudence, and disregards the legal rules of waiver and procedural bar.

¶ 11 I am authorized to state that Vice–Presiding Judge Lewis joins in this Concur in Part/Dissent in Part.