KELLEY v. STATE



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document: KELLEY v. STATE

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 KELLEY v. STATE
2019 OK CR 25
451 P.3d 566
Case Number: F-2018-12
Decided: 10/03/2019
DANIEL BRYAN KELLEY, Appellant v. THE STATE OF OKLAHOMA, Appellee.
Cite as: 2019 OK CR 25, 451 P.3d 566

 

 

O P I N I O N

ROWLAND, JUDGE:

¶1 Before the Court is Appellant Daniel Bryan Kelley's direct appeal following his resentencing trial in the District Court of Tulsa County, Case No. CF-2015-694. Kelley was convicted in his original jury trial of First Degree Rape by Instrumentation, After Former Conviction of Two Felonies, in violation of 21 O.S.2011, §§ 1111.1 and 1114(A) (Count 1) and misdemeanor Assault and Battery, in violation of 21 O.S.Supp.2014, § 644 (Count 3). The district court imposed the jury's verdict and sentenced Kelley to twenty years imprisonment and a $5,000.00 fine on Count 1 and ninety days in the county jail on Count 3, with the sentences running concurrently. Kelley appealed. This Court affirmed Kelley's convictions on both counts and his sentence on Count 3, but remanded the case for resentencing on Count 1 because of the erroneous admission of a prior out-of-state conviction for sentence enhancement. Kelley v. State, Case No. F-2015-963 (unpublished) (Okl. Cr. July 13, 2017). The prosecution thereafter filed a motion for jury sentencing. The Honorable Sharon K. Holmes, District Judge, presided over Kelley's resentencing trial and sentenced him, in accordance with the resentencing jury's verdict, to life imprisonment.[1] This appeal followed and Kelley raises four issues:

(1) whether he received effective assistance of appellate counsel on direct appeal in Case No. F-2015-963;

(2) whether the district court erred in instructing the jury on the range of punishment;

(3) whether the district court erred in following the mandate of this Court and not allowing him to reject the relief granted by this Court; and

(4) whether his sentence is excessive.

¶2 We find relief is not required and affirm the Judgment and Sentence of the district court.[2]

 

1. Ineffective Assistance of Counsel 

 

¶3 Kelley contends he is entitled to relief because of ineffective assistance of appellate counsel. Kelley faults appellate counsel in his original direct appeal for failing to advise him of the potential adverse consequences of successfully appealing his conviction and sentence, namely the risk of a longer sentence. According to Kelley, appellate counsel failed to adequately advise him that he could receive a life sentence if he successfully appealed his twenty-year sentence, otherwise he would not have pursued his sentencing error claim that resulted in resentencing. Kelley maintains that he was under the impression that this Court would honor appellate counsel's request for sentence modification if the Court found merit in his claim. He claims he was prejudiced because he received the maximum punishment at his resentencing trial. This Court granted Kelley's Application for Evidentiary Hearing and Supplementation of Record to investigate his claim. Rule 3.11(B)(3)(b)(ii), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019). The district court found that Kelley failed to prove appellate counsel was ineffective.

¶4 This Court reviews claims of ineffective assistance of appellate counsel to determine: (1) whether counsel's performance was objectively unreasonable; and (2) whether counsel's performance resulted in prejudice and deprived the appellant of a fair proceeding with reliable results. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); Logan v. State, 2013 OK CR 2, ¶ 5, 293 P.3d 969, 973. We indulge a strong presumption that counsel's representation was within the wide range of reasonable professional assistance. Logan, 2013 OK CR 2, ¶ 5, 293 P.2d at 973. The burden is on Kelley to affirmatively prove prejudice resulting from his appellate attorney's actions. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067. He must show that there is a reasonable probability that, but for counsel's unprofessional error, the result of his appeal would have been different. Id. at 694, 104 S.Ct. at 2068. This Court need not determine whether counsel's performance was deficient if there is no showing of harm. See Logan, 2013 OK CR 2, ¶ 7, 293 P.3d at 974. Where an evidentiary hearing has been held, this Court gives strong deference to the findings of fact and conclusions of law of the district court, but we decide the ultimate issue concerning whether counsel was ineffective. Rule 3.11(B)(3)(b)(iv), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019).

¶5 The district court found appellate counsel's failure to advise Kelley either that the Court could elect a different remedy than that requested in the appellate brief, or that resentencing could result in a sentence greater than that originally imposed, did not fall below the objective standard of reasonableness imposed by the Sixth Amendment. The district court further found that Kelley failed to show the necessary prejudice because its review of the evidence showed Kelley would have accepted the risk of a longer sentence and would have elected to submit his sentencing error claim on appeal even had he been warned of the possibility of receiving a longer sentence.

¶6 The record reveals the district court advised Kelley of his right to appeal at formal sentencing of his original trial and Kelley elected to exercise his right. Appellate counsel raised seven propositions of error. Six of the claims, if meritorious, would have resulted in a complete retrial, exposing Kelley, barring acquittal, to a life sentence and the risk a second jury would not be as lenient as his first. The remaining claim alleged an error related to sentencing only. Had appellate counsel not also included the meritorious sentencing issue, a successful appeal would have left Kelley facing a minimum sentence on retrial of twenty years imprisonment instead of ten years imprisonment. Raising the sentencing error was therefore Kelley's only chance of facing a lesser range of punishment if his case was reversed and remanded based on one of the other errors alleged. On appeal, this Court found merit in the sentencing error claim only and opted to remand Kelley's case for resentencing, his request for sentence modification notwithstanding. Faulting appellate counsel for raising a meritorious issue is certainly unusual.[3] The record of the evidentiary hearing, however, uncovered that Kelley was neither advised of the claims raised on his behalf nor of the possible consequences of victory on any claim. Appellate counsel, by his own admission, thought the sentencing error claim was a winner and he considered the possibility of prevailing on the sentencing error claim only, structuring his prayer for relief accordingly to minimize Kelley's exposure. He understood that resentencing was not in Kelley's best interest.[4] Appellate counsel was aware that this Court was not bound by his request for relief and that it could remand Kelley's case for resentencing. He was also aware that the Court had recently rejected an appellant's request for sentence modification in an unrelated case and instead ordered resentencing.

¶7 We need not dwell on whether appellate counsel's representation was deficient in this case because Kelley cannot show the necessary prejudice to prevail.[5] Kelley must show the outcome of his appeal would have been different had appellate counsel advised him of the possible adverse consequences of appealing his original conviction and sentence. In other words, Kelley must show either that he would not have raised his sentencing error claim or appealed at all. Kelley was unable to convince the district court that he would have forgone his sentencing error claim on direct appeal.

¶8 Appellate counsel wrote Kelley a letter the day after he received the Court's opinion, remanding Kelley's case for resentencing. (State's Exhibit 1) Appellate counsel informed Kelley, via the letter, that he had been granted partial relief because of the improper use of one of his prior convictions for sentence enhancement. Appellate counsel further informed Kelley that "either the judge or the jury will be able to sentence you within a range of ten to life." He pointed out the risk of resentencing, noting specifically "[a]s unfair as it sounds, you could get more than the twenty years that you already have been sentenced to." Shortly thereafter, Kelley spoke with appellate counsel by telephone. During this phone call, appellate counsel followed up on his letter and discussed the present posture of the case. He understood Kelley to approve, after the fact, of his decision to raise the sentencing error claim and to decline his offer to try to dismiss the appeal. Although appellate counsel proposed dismissing Kelley's successful appeal because of the risk of a longer sentence, Kelley said he wanted to proceed. The district court rejected Kelley's testimony disputing appellate counsel's recollection of his willingness to risk resentencing and dismissed appellate counsel's belief that he misunderstood Kelley's intentions about moving forward. The district court found the fact that Kelley wanted to move forward with resentencing, despite his exposure to a longer sentence, was proof he would have raised the sentencing error claim in his direct appeal even if appellate counsel had informed him of the risks of appeal.

¶9 The district court evaluated the credibility of the witnesses and the evidence supports its finding that Kelley would have accepted the risk of resentencing had he been advised of the possible adverse consequences of appealing. Based on the record before us, Kelley has not shown the required prejudice to prevail. For that reason, we deny Kelley's ineffective assistance of appellate counsel claim.

2. Jury Instruction

¶10 Kelley contends the district court abused its discretion by refusing his requested range of punishment jury instruction. Kelley asked the district court to instruct his resentencing jury that the range of punishment for first degree rape by instrumentation, after one former felony conviction was ten to twenty years imprisonment, ten years being the minimum sentence under the applicable habitual offender statute[6] and twenty years being the sentence Kelley received at his original trial.[7] The district court rejected Kelley's argument that due process and fundamental fairness compelled that his original jury's sentence act as the punishment cap for resentencing. We review the district court's ruling for an abuse of discretion. Barnes v. State, 2017 OK CR 26, ¶ 22, 408 P.3d 209, 217. An abuse of discretion is any unreasonable or arbitrary ruling made without proper consideration of the facts and law pertaining to the issue. Neloms v. State, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170.

¶11 Kelley puts a novel twist on the "clean slate" doctrine to support his claim. The well-established "clean slate" doctrine rests on the premise that once the defendant's original conviction has been wholly nullified at his behest, the slate is wiped clean, retrial is not barred by double jeopardy, and the defendant is subject to the full range of punishment. According to Kelley, when this Court remands a case solely for resentencing, the second jury, out of fairness, should not be allowed to resentence the defendant in excess of the original jury's verdict. He maintains the "clean slate" doctrine should not apply to him and those similarly situated because the underlying conviction has been affirmed and the original jury's sentencing decision deserves deference because that jury decided the level of the defendant's culpability. Because his original jury imposed the minimum sentence of twenty years under its instructions, Kelley argues that its verdict made clear that he was undeserving of the maximum sentence and its decision should enjoy some binding effect. In other words, his second jury should have been constrained by his original jury's intentions since that jury decided the facts of the underlying offense. The only justification for not capping the maximum sentence, he contends, is to punish a defendant for appealing. He asks this Court to remedy this alleged due process violation by remanding his case for a new sentencing proceeding with the range of punishment capped at twenty years imprisonment.[8]

 

¶12 In North Carolina v. Pearce, 395 U.S. 711, 725, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), the Supreme Court held that vindictiveness against the accused for having successfully overturned his conviction must play no part in the sentence he or she receives after a new trial. In order to assure the absence of vindictive motivation, the Court concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons underlying the judge's sentencing decision must affirmatively appear. Id. at 726, 89 S.Ct. at 2081 (emphasis added). Otherwise, the presumption arises that a greater sentence has been imposed for a vindictive purpose - a presumption that must be rebutted by '"objective information ... justifying the increased sentence."' Texas v. McCullough, 475 U.S. 134, 142, 106 S.Ct. 976, 981, 89 L.Ed.2d 104 (1986) (quoting United States v. Goodwin, 457 U.S. 368, 374, 102 S.Ct. 2485, 2489, 73 L.Ed.2d 74 (1982)). The Supreme Court has since made clear that the Pearce presumption of vindictiveness does not apply in every case in which a defendant receives a higher sentence on retrial. E.g. Alabama v. Smith, 490 U.S. 794, 802-03, 109 S.Ct. 2201, 2206-07, 104 L.Ed.2d 865 (1989) (holding no presumption of vindictiveness arose where sentence imposed after trial was greater than sentence imposed after guilty plea that defendant succeeded in vacating); Chaffin v. Stynchcombe, 412 U.S. 17, 26-28, 93 S.Ct. 1977, 1982-83, 36 L.Ed.2d 714 (1973) (holding no presumption of vindictiveness arose when second jury on retrial following successful appeal imposed a higher sentence than a prior jury). The evil that Pearce sought to rectify was eliminating vindictiveness in the retrial process rather than preventing the imposition of an increased sentence on retrial, since valid reasons associated with the need for discretion in the sentencing process exist. Smith, 490 U.S. at 799, 109 S.Ct. at 2204-05. Where there is no reasonable likelihood the increase in punishment was the result of vindictiveness, the burden remains with the defendant to prove actual vindictiveness. Id. at 799-800, 109 S.Ct. at 2205.

 

¶13 Kelley cites no authority holding the "clean slate" doctrine operates differently at a resentencing trial versus a complete retrial. Nor does he offer any authority holding that a defendant should not, or is not, subject to the full range of punishment provided by law at a resentencing proceeding. See Chaffin, 412 U.S. at 25, 93 S.Ct. at 1982 (recognizing the possibility of a higher sentence has been accepted as a legitimate concomitant of the retrial process). Even though Chaffin is a complete retrial case, it is particularly instructive. Chaffin successfully appealed his original conviction and jury sentence of fifteen years. Id. at 18-19, 93 S.Ct. at 1978-79. At his retrial, the jury again returned a guilty verdict and fixed punishment at life imprisonment. Id. at 19-20, 93 S.Ct. at 1979. Chaffin argued on appeal that it was improper and unfair for the State to allow the second jury to render a harsher sentence on retrial. The Supreme Court rejected his arguments and held:

Guided by the precedents of this Court, these are the conclusions we reach. The rendition of a higher sentence by a jury upon retrial does not violate the Double Jeopardy Clause. Nor does such a sentence offend the Due Process Clause so long as the jury is not informed of the prior sentence and the second sentence is not otherwise shown to be a product of vindictiveness. The choice occasioned by the possibility of a harsher sentence, even in the case in which the choice may in fact be 'difficult,' does not place an impermissible burden on the right of a criminal defendant to appeal or attack collaterally his conviction.

Id. at 35, 93 S.Ct. at 1987.

¶14 The record shows Kelley's jury at his resentencing trial was unaware of the original sentence meted out by his former jury. Kelley's resentencing jury was also not informed that he had successfully appealed and won a new sentencing trial. The district court instructed the jury on the applicable range of punishment under Section 51.1, and the jury fixed punishment within the range provided without any evidence of vindictiveness appearing in the record. Based on the reasoning in Chaffin, Kelley has neither established a violation of due process, nor has he shown the district court abused its discretion in refusing his range of punishment instruction. Accordingly, we find the district court did not err in refusing to cap Kelley's punishment range at twenty years imprisonment. This claim is denied.

3. Resentencing Relief

¶15 Kelley argues the district court abused its discretion by not permitting him to reject the resentencing relief ordered by this Court on direct appeal in Kelley v. State, Case No. F-2015-963 (unpublished) (Okl. Cr. July 13, 2017). Kelley unsuccessfully sought reconsideration of his request for sentence modification via a Petition for Rehearing after the Court handed down its decision ordering resentencing. 22 O.S.2011, § 1066.[9] He also objected to resentencing below prior to jury selection at his resentencing trial.

¶16 The parties agree there is no mechanism to dismiss an appeal once it has been decided by this Court. Kelley exercised his right to appellate review of his conviction. When this Court decided his appeal in a way that exposed him to a greater sentence than originally imposed, Kelley understandably wanted the option to reject the ordered relief and essentially rescind his decision to appeal. If a criminal defendant avails himself of the appellate process, this Court's decision is binding once decided and will not be recalled absent a finding by the Court that the appeal was improvidently decided. This Court denied rehearing in Kelley's original direct appeal because the issued opinion disposed of all issues raised based on appropriate authority.

¶17 The opinion ordering resentencing was binding on the parties and Kelley provides no authority allowing a district court to ignore a directive from an appellate court. We therefore find that Kelley has not shown that the district court abused its discretion by conducting the ordered resentencing trial and disallowing his request, for all intents and purposes, to dismiss his decided appeal. This claim is denied.

4. Excessive Sentence

¶18 Kelley contends his sentence of life imprisonment is excessive because his original jury sentenced him to only twenty years and the facts of his case do not warrant a life sentence. "This Court will not disturb a sentence within statutory limits unless, under the facts and circumstances of the case, it shocks the conscience of the Court." Thompson v. State, 2018 OK CR 32, ¶ 16, 429 P.3d 690, 694.

¶19 Kelley's sentence is within the range of punishment provided by law for first degree rape by instrumentation after a former felony conviction. The evidence showed he attacked and violated a vulnerable woman resulting in physical injury. His prior conviction was for assault with a dangerous weapon committed two years prior to the instant crime. Kelley is unable to show his harsher sentence was the product of vindictiveness for having successfully attacked his first sentence. His resentencing jury heard the evidence of the crime along with his record and fixed punishment at the maximum. The sentence, though harsh, was not patently undeserved based on the evidence. For these reasons, we find that Kelley's life sentence does not meet our "shock the conscience" test and that his claim of excessive sentence is without merit.

DECISION

¶20 The Judgment and Sentence of the district court is AFFIRMED. Kelley's request for oral argument is DENIED. Pursuant to Rule 3.15, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019), the MANDATE is ORDERED issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF TULSA COUNTY
THE HONORABLE SHARON K. HOLMES, DISTRICT JUDGE

 
 
 
 APPEARANCES AT TRIAL

 REBECCA NEWMAN
 STUART SOUTHERLAND
 ASSISTANT PUBLIC DEFENDERS
 423 S. BOULDER AVE.,
 SUITE 300
 TULSA, OK 74103-3805
 COUNSEL FOR DEFENDANT
 
 
 APPEARANCES ON APPEAL

 NICOLE DAWN HERRON
 TULSA COUNTY PUBLIC
 DEFENDER'S OFFICE
 423 S. BOULDER, AVE.,
 SUITE 300
 TULSA, OK 74103-3805
 COUNSEL FOR APPELLANT
 
 
 
 
 KENNETH ELMORE
 KEVIN KELLER
 ASST. DISTRICT ATTORNEYS
 500 S. DENVER
 TULSA, OK 74103
 COUNSEL FOR STATE
 
 
 MIKE HUNTER
 ATTORNEY GENERAL
 OF OKLAHOMA
 THEODORE M. PEEPER
 ASSISTANT ATTORNEY
 GENERAL
 313 N.E. 21ST STREET
 OKLAHOMA CITY, OK 73105
 COUNSEL FOR APPELLEE
 
 
 

 

OPINION BY: ROWLAND, J.
LEWIS, P.J.: Specially Concur
KUEHN, V.P.J.: Concur
LUMPKIN, J.: Concur
HUDSON, J.: Concur

FOOTNOTES

[1] Under 21 O.S.Supp.2015, § 13.1, Kelley must serve 85% of his sentence of imprisonment before he is eligible for parole consideration.

[2] Kelley requested oral argument, claiming the issues involved in this case are novel. We find oral argument would not be beneficial and is not necessary for a determination of the issues raised. Rule 3.8, Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. (2019).

[3] The typical ineffective assistance of appellate counsel claim involves the omission of an issue on appeal and the Court is required to examine the merits of the omitted claim to determine if raising the claim would have changed the outcome of the appeal.

[4] Andrea Miller, head of the Appellate Division of the Oklahoma County Public Defender's Office, testified that her practice, as well as office policy, is to advise clients of appellate consequences especially when victory could expose the defendant to a lengthier sentence.

[5] Best practices dictate that appellate counsel somehow advise a client of the appellate process, the likelihood of success on appeal, and the attendant risks associated with pressing any particular claim so the client can make an informed and intelligent decision whether or not to raise an issue or appeal at all. ABA Standards for Criminal Justice, Defense Function 4-9.1(a), 4-9.2(c), 4-9.3(a)(2015).

[6] 21 O.S.2011, § 51.1(A)(1).

[7] The range of punishment under Section 51.1(A)(1) is ten years to life imprisonment.

[8] This remedy Kelley contends would 1) satisfy the court's preference for resentencing; 2) prevent a prosecutor from capitalizing on his or her mistakes; and 3) ensure the fact finder's culpability decision is preserved.

[9] Section 1066 provides in relevant part:

The appellate court may reverse, affirm or modify the judgment or sentence appealed from, and may, if necessary or proper, order a new trial or resentencing. In either case, the cause must be remanded to the court below, with proper instructions, and the opinion of the court, within the time, and in the manner, to be prescribed by rule of the court.

LEWIS, PRESIDING JUDGE, SPECIALLY CONCURRING:

¶1 This case serves as a cautionary reminder of the considerable risks of pursuing a criminal appeal that often receive too little attention or discussion between appellate defense attorneys and their clients. Whenever practically possible, appellate defense counsel should "explain to the client the advantages and disadvantages of an appeal including . . . the possibility that if the client prevails on appeal, a remand could result in a less favorable disposition." ABA Standards for Criminal Justice, Defense Function 4-9.1(a).

¶2 I would specifically find that counsel's proven omission to timely convey such advice as part of appellate representation is unreasonably deficient performance within the meaning of Strickland. Indeed, the record in this case surely supports such a finding. Where such a breach of prevailing professional standards has materially disadvantaged the defendant, the government, rather than the defendant, must generally bear the burden of counsel's error.

¶3 Appellant has not shown here that he suffered a legally cognizable harm as a result of counsel's error. He can hardly deny that his original sentencing trial was affected by substantial error, or that this Court's reversal effectively vindicated his right to sentencing by a properly instructed jury. While proper advice from counsel about the risks of advancing this claim on appeal might have dissuaded some appellants, I cannot say that the trial court's factual conclusion on that question is utterly contrary to the logic and effect of the facts presented. Applying proper deference, the trial court's findings must be affirmed.

¶4 Counsel's adherence to prevailing professional standards concerning the duty to provide accurate and timely advice about the significant risks of a criminal appeal would likely prevent such troubling questions in the future.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Criminal Appeals Cases
 Cite
Name
Level

 2012 OK CR 7, 274 P.3d 161, NELOMS v. STATE
Discussed
 2013 OK CR 2, 293 P.3d 969, LOGAN v. STATE
Discussed at Length
 2017 OK CR 26, 408 P.3d 209, BARNES v. STATE
Discussed
 2018 OK CR 32, 429 P.3d 690, THOMPSON v. STATE
Discussed
Title 21. Crimes and Punishments
 Cite
Name
Level

 21 O.S. 13.1, Required Service of Minimum Percentage of Sentence - Offenses Specified
Cited
 21 O.S. 51.1, Punishment for Second and Subsequent Offenses after Conviction of Offense Punishable by Imprisonment in State Penitentiary
Cited
 21 O.S. 644, Punishment for Assault and Battery
Cited
 21 O.S. 1111.1, Rape by Instrumentation - Consent - Sentencing
Cited
Title 22. Criminal Procedure
 Cite
Name
Level

 22 O.S. 1066, Power of Appellate Court - Procedure When Case Reversed for New Trial - Duties of Court Clerk
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA