2017 OK CR 26

**Travis Dillion BARNES, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F-2016-298**

Court of Criminal Appeals of Oklahoma.

FILED 11/22/2017

APPEARANCES AT TRIAL, MARK A. SCHANTZ, 201 W. FIFTH, STE. 201, TULSA, OK 74103, COUNSEL FOR DEFENDANT

JARED SIGLER, FIRST ASSISTANT DISTRICT ATTORNEY, NOWATA COUNTY COURTHOUSE, 229 N. MAPLE, NOWATA, OK 74048, COUNSEL FOR THE STATE

APPEARANCES ON APPEAL, JEREMY STILLWELL, P.O. BOX 926, NORMAN, OK 73070, COUNSEL FOR APPELLANT

E. SCOTT PRUITT, OKLAHOMA ATTORNEY GENERAL, JULIE PITTMAN, ASSISTANT ATTORNEY GENERAL, 313 N.E. 21ST STREET, OKLAHOMA CITY, OK 73105, COUNSEL FOR APPELLEE

## OPINION

HUDSON, JUDGE:

¶1 Appellant Travis Dillion Barnes was tried and convicted by a jury in Nowata County District Court, Case No. CF-2014-124, for the crimes of Count 1: First Degree Burglary, in violation of 21 O.S.2011, § 1431; and Count 2: First Degree Rape, in violation of 21 O.S.2011, §§ 1114, 1115. The jury recommended Barnes be sentenced to fifteen (15) years imprisonment and a $10,000.00 fine on Count 1; and life imprisonment without the possibility of parole on Count 2. The Honorable Curtis L. DeLapp, District Judge, sentenced Barnes in accordance with the jury's recommendations and further imposed a $1,000.00 fine on Count 2.[1] Judge DeLapp additionally ordered Count 1 to run consecutive to Count 2, imposed various costs and fees, and ordered Barnes to register as a sex offender. Barnes now appeals. We **AFFIRM** Barnes' convictions, but **VACATE** his sentences and **REMAND FOR RESENTENCING.**

## BACKGROUND

¶2 On November 30, 2014, 84-year-old D.P. lived alone in an apartment at the Woodbrook Apartments in Nowata. That evening, having gone to bed at 5:30 p.m., D.P. was awakened by Appellant, who had entered her apartment through a window. Appellant jumped on top of D.P. and began choking her, stating "all right, Donna".[2] D.P. was on her back and struggled to remove Appellant's hands from her throat. Unable to pull D.P.'s underwear down as he fought to

subdue her, Appellant rolled D.P. over. As D.P. laid face down on the bed, Appellant inserted his penis into her rectum as well as her vaginal area. Although D.P. was unsure how long the rape lasted, she approximated that Appellant penetrated her two or three times. After the rape, Appellant pushed D.P. to the side of the bed, ran out of the bedroom—taking the bed sheets with him—and exited the apartment through the front door. D.P. subsequently called the police and then her family.

¶3 Police arrived and D.P. was taken to a Bartlesville hospital. At the hospital, D.P. was examined by Teresa Watson, a sexual assault nurse examiner (SANE). During the SANE exam, Watson took swabs of D.P.'s anal and vaginal areas. These swabs were later submitted to the Oklahoma State Bureau of Investigation (OSBI) for analysis. Janice Joslin, a Technical Manager for the OSBI's Forensic Biology unit, found sperm and the P30 protein commonly found in seminal fluid on one of the vaginal swabs and two of the anal swabs. OSBI Criminalist Joseph Orcutt testified that Appellant could not be excluded as a contributor of the DNA evidence recovered from these three swabs.[3]

¶4 Appellant took the stand in his own defense at trial and admitted unlawfully entering D.P.'s apartment and raping her. However, Appellant contended that he did so under the threat of being shot. Appellant explained that he went to D.P.'s apartment with Troynell Threadgill and that Threadgill had a gun in his possession.[4] Appellant indicated that Threadgill was the first to enter

---

1. Appellant must serve at least 85% of his Count 1 sentence before parole eligibility. 21 O.S.Supp. 2014, § 13.1(12).

2. Appellant knew D.P.'s name as he had previously been to her apartment to perform odd jobs. However, despite D.P.'s familiarity with Appellant, she was unable to identify Appellant as her attacker because her bedroom was too dark.

3. With regard to the vaginal swab, Orcutt testified the probability of finding another individual, other than Appellant, in the population with the same DNA profile was 1 in 4.45 billion. As to the anal swabs, D.P.'s DNA comprised the major component of the mixture found on one of the swabs; nonetheless, Appellant could not be ex-

cluded as the donor of the minor component. As for the second anal swab, Appellant's DNA comprised the major component of the mixture. Orcutt testified the "probability of randomly selecting someone having that exact same profile would be at least 1 in 69.8 quintillion."

4. While Threadgill acknowledged accompanying Appellant to the Woodbrook Apartments, he testified that he never entered any of the apartments. Rather, Threadgill testified that he left Appellant at the apartment complex because it was too cold outside. Threadgill explained that after he left the apartment complex he went to the store, and when Appellant did not show up, he then went to his "home girl's house."

D.P.'s apartment through a window.[5] Appellant "acted out of [his] instincts, and jumped in the window head first, hit the floor, and jumped up, ran, and [ ] jumped on top of [D.P.]." Appellant admitted covering D.P.'s mouth in a manner consistent with D.P.'s testimony and explained that he told her "it's all right." According to Appellant, Threadgill then came up behind him, pointed a gun at him, and told him to " 'F' her."[6] When questioned on cross-examination regarding how he managed to get aroused and ultimately ejaculate, Appellant responded that it was a "life or death situation" and that he "did what [he] had to do to make sure [he] survived and so did [D.P.]." Appellant maintained that he used his erect penis to penetrate D.P.'s anus and vagina to "save her life."

## I. Allegations of Prosecutorial Misconduct.

¶ 5 In his first proposition of error, Appellant alleges several instances of prosecutorial misconduct occurred during the prosecutor's closing argument. Appellant specifically complains that the prosecutor improperly 1) commented on Appellant's right to trial; 2) implied Appellant is a liar; 3) interjected his personal opinion; 4) appealed to the jury for a verdict based on sympathy and passion; and 5) misstated the law.

¶ 6 Both parties are given considerable latitude in closing argument to argue the evidence and reasonable inferences from it. *Pullen v. State*, 2016 OK CR 18, ¶ 13, 387 P.3d 922, 927. Moreover, "[i]t is well established that a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." *Frederick v. State*, 2017 OK CR 12, ¶ 138, 400 P.3d 786, 822, *as amended* (June 23, 2017); *see also Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464,

2471, 91 L.Ed. 2d 144 (1986). As Appellant did not object to the various instances of prosecutorial misconduct now alleged, he has waived all but plain error review of these claims on appeal. *Sanders v. State*, 2015 OK CR 11, ¶ 23, 358 P.3d 280, 286. "Plain error is an actual error, that is plain or obvious, and that affects a defendant's substantial rights, affecting the outcome of the trial." *Mitchell v. State*, 2016 OK CR 21, ¶ 24, 387 P.3d 934, 943. *See also Jackson v. State*, 2016 OK CR 5, ¶ 4, 371 P.3d 1120, 1121. This Court will only correct plain error if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings or otherwise represents a miscarriage of justice. *Jackson*, 2016 OK CR 5, ¶ 4, 371 P.3d at 1121.

¶ 7 We focus our review of this claim primarily on Appellant's first contention—the prosecutor improperly commented on his right to trial—as we find plain error that requires this matter be remanded for resentencing. The prosecutor at trial made the following statements at the start of his closing argument:

Mr. Barnes told you that he had to rape [D.P.]. He had to do it, right. That's what he told you. Well, let me tell you something that he didn't have to do.

A defendant has a right to a jury trial, you can exercise that right. It's not mandatory that you exercise that right. If you're a defendant and you've got evidence that's overwhelming against you, you can enter a plea to the charge, you can plead guilty.

You don't have to have an 84 year old woman come in and relive what happened to her. You don't have to have 12 citizens of Nowata County come in and listen to this type of evidence when it's overwhelming that you're guilty. I want ya'll to think about that. He made Donna come back in here, re-live it. He made you all listen to it just so he could tell a story that if your kid started telling you, you would say, stop it. You would say, stop it, that's enough.

---

5. Appellant claimed the window screen was already off D.P.'s window when the two arrived. Notably, a knife and knife sheath belonging to Appellant were found outside D.P.'s apartment window.

6. Significantly, D.P.'s testimony does not indicate a second person was present during the rape.

(Tr. III 54–55). The prosecutor followed up these comment by suggesting Appellant wasted the jury's time in hopes that "12 people of Nowata County ... who are deciding his fate for the rest of his life" would believe his story.

¶ 8 The prosecutor's commentary on Appellant's decision to exercise his right to trial, rather than plead guilty, is nothing short of alarming. Adding to this alarm is the fact that defense counsel and the trial court did not intervene. Yet surprisingly, despite the seemingly clear error presented by this commentary, this Court has never directly addressed the impact such remarks have on a defendant's Sixth Amendment right to a jury trial. We do so now and, not surprisingly, find the prosecutor's remarks not only fell far outside the wide latitude prosecutors are allowed in closing argument, but they additionally violated Appellant's Sixth Amendment right to a jury trial. The prosecutor's overstep thus amounts to constitutional error.

¶ 9 The Sixth Amendment right to a jury trial in criminal prosecutions is a fundamental right made obligatory on the States by the Fourteenth Amendment. *Duncan v. Louisiana*, 391 U.S. 145, 155—56, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Moreover, Oklahoma's constitution provides that a defendant's "right to trial by jury shall be and remain inviolate ...." Okla. Const. art. 2, § 19. Thus, a criminal defendant possesses an *absolute* constitutional right to plead not guilty and be tried before a jury, and should not and cannot be punished for exercising that right. *See United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed. 2d 138 (1968) (capital sentencing provision that triggered the possibility of a death sentence if the defendant stood trial found unconstitutional as it needlessly penalized a defendant for asserting his Sixth Amendment right to trial and Fifth Amendment right to plead not guilty); *Gillespie v. State*, 1960 OK CR 67, ¶ 19, 355 P.2d 451, 457, *overruled on other grounds in Hill v. State*, 1972 OK CR 209, 500 P.2d 1075 (a defendant cannot be penalized because he "asked for and received a jury trial").

¶ 10 To this end, a defendant's decision to exercise this constitutionally protected right is a factor which cannot be used against him at trial to influence the jury in their guilt or sentencing determinations. *See Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (prosecutor is prohibited from using defendant's exercise of the constitutional right to remain silent against defendant in case-in-chief); *Bosse v. State*, 2017 OK CR 10, ¶ 30, 400 P.3d 834, 847 ("It is settled that prosecutors cannot comment on a defendant's exercise of the Fifth Amendment privilege against self-incrimination, using it as substantive evidence of guilt."); *Hanf v. State*, 1977 OK CR 41, ¶ 18, 560 P.2d 207, 211 ("It is error for the prosecutor to comment—either directly or indirectly—at any stage of trial—upon the defendant's right to remain silent."). We find persuasive (although not binding on this Court) the following illuminating reasoning from the North Carolina Court of Appeals in *State v. Thompson*, 118 N.C. App. 33, 454 S.E.2d 271( 1995):

> The exercise of the right to a jury trial is [ ] no less fundamental in our jurisprudence than reliance upon the right to remain silent. Accordingly, prosecutorial argument complaining a criminal defendant has failed to plead guilty and thereby put the State to its burden of proof is no less impermissible than an argument commenting upon a defendant's failure to testify. Indeed, we discern no distinction between the two in terms of intrusion upon a criminal defendant's constitutional rights. We therefore hold that reference by the State to a defendant's failure to plead guilty is violative of his Sixth Amendment right to a jury trial.

*Id.* at 41, 454 S.E.2d at 276.

¶ 11 The prosecutor's argument in the instant case was a direct attack on Appellant's constitutional right to trial. The prosecutor expressly referenced Appellant's decision to invoke his right to a jury trial. In doing so, the prosecutor demeaned the vital process established by the Sixth Amendment—"the right to be confronted with the witnesses against him." He further ignored the presumption of innocence and inferred Appellant

should have acceded to the State's evidence, waived his right to trial and pled guilty. The prosecutor thus exploited Appellant's decision to invoke his right to jury trial by using it against him, implying Appellant had abused our legal system—wasting both the prosecutor's and the jury's time. He implied too that as a result of Appellant's nonsensical decision to go to trial, Appellant had inexcusably re-victimized D.P. by making her "come back in here" and "re-live" the rape just so he could tell "a story." Hence, the prosecutor's commentary was nothing less than an assault on Appellant's decision to exercise his constitutional right to trial. This type of argument is constitutionally impermissible and cannot be condoned. *See Darden*, 477 U.S. at 182, 106 S.Ct. at 2472 (1986) (prosecutorial misconduct during closing argument may infect trial with constitutional error when it "implicate[s] ... specific rights of the accused"). We therefore find the prosecutor's comments suggesting Appellant abused the legal system by going to trial, rather than plead guilty, were violative of Appellant's Sixth Amendment right to a jury trial.

¶ 12 We must next determine the ramifications of the prosecutor's constitutional error. "Most constitutional errors occurring during trial are subject to harmless error analysis, as they may be assessed, along with the evidence presented, for any prejudice to the defendant." *Bosse*, 2017 OK CR 10, ¶ 40, 400 P.3d at 851 (citing *Robinson v. State*, 2011 OK CR 15, ¶ 3, 255 P.3d 425, 428 and *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967)). As the prosecutor's violation in the present case amounts to an error in the trial process, the violation is subject to harmless error analysis, *i.e.*, application of the "harmless-beyond-a-reasonable-doubt standard." *Bartell v. State*, 1994 OK CR 59, ¶¶ 14–19, 881 P.2d 92, 97–99 (distinguishing between "trial errors" that occur during the presentation of the case, which are subject to harmless error analysis, *and* "structural defects" that impact the entire conduct of the trial and thus defy analysis by harmless error standards).[7] We therefore must determine the role the prose-

cutor's Sixth Amendment violation played in the jury's guilty verdicts and sentencing recommendations. *See Miller v. State*, 2013 OK CR 11, ¶ 106, 313 P.3d 934, 972 (in determining whether constitutional error is harmless beyond a reasonable doubt, the Court focuses upon the specific circumstances of the case and the role the violation played in the case).

¶ 13 The evidence substantiating Appellant's guilt was overwhelming. Appellant took the stand and confessed to the crimes. Moreover, DNA evidence and circumstantial evidence supported the victim's account of the crimes. Given the overwhelming evidence substantiating Appellant's guilt in this case, we find, beyond a reasonable doubt, that the Sixth Amendment violation committed by the prosecutor was harmless as to the jury's findings of guilt. However, the role the violation played in the jury's sentencing recommendations is a far more difficult determination. While Appellant's guilt is certain and his crimes unquestionably deplorable, finding the prosecutor's constitutionally impermissible argument played *no* role in the jury's punishment assessment is a dubious reach. Finding the prosecutor's forbidden argument was so egregious and the resulting constitutional violation so grave, we cannot say with confidence that the prosecutor's impermissible arguments did not divert the jury from its duty to determine the punishment strictly on the evidence. Thus, we find this matter must be remanded for resentencing.

¶ 14 The jury recommended, and Appellant received, a fifteen (15) year sentence for his Count 1 burglary conviction. The range of punishment was seven (7) to twenty (20) years. 21 O.S.2011, § 1436. As for his Count 2 rape conviction, the jury recommended, and Appellant received, the maximum sentence—life without parole. Appellant was 22 years-old at the time of the crimes. Additionally, the record does not reflect he has any prior felony convictions. While the rape was horrific, given the circumstances presented, we cannot say with confidence that the prosecutor's impermissible arguments did not divert the jury from its duty to determine the punishment strictly on the evidence. That is,

---

7. The harmless error doctrine as it relates to non-constitutional errors is discussed thoroughly

in *Simpson v. State*, 1994 OK CR 40, 876 P.2d 690.

we cannot conclude, beyond a reasonable doubt, that the jury's recommended sentences would have been the same absent the prosecutor's violative argument. Thus, we find plain error warranting relief occurred and remand the matter for resentencing.

¶ 15 In light of this determination, an in-depth analysis of Appellant's remaining allegations of prosecutorial misconduct is unwarranted. Having reviewed these claims, we find that given the overwhelming evidence of Appellant's guilt any error which may have occurred in relation to these claims was harmless as to the jury's findings of guilt. Moreover, any impact the alleged errors may have had on the jury's sentence recommendations is cured by the Court's remand for resentencing.

## II. Ineffective Assistance of Counsel.

¶ 16 Appellant argues in his second proposition of error that his trial counsel was ineffective for failing to 1) request an instruction on the defense of duress; 2) object to the prosecutor's improper comments during closing arguments (Proposition I above); 3) object to improper hearsay evidence; and 4) object to irrelevant evidence.

¶ 17 To prevail on an ineffective assistance of counsel claim, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed. 2d 674 (1984). *See also Harrington v. Richter*, 562 U.S. 86, 104–05, 131 S.Ct. 770, 787–88, 178 L.Ed. 2d 624 (2011) (summarizing *Strickland* two-part test). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional conduct. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. "When a claim of ineffectiveness of counsel can be disposed of on the ground of lack of prejudice, that course should be followed." *Malone v. State*, 2013 OK CR 1, ¶ 16, 293 P.3d 198, 207. To demonstrate prejudice a defendant must show there is a reasonable probability that the outcome of the trial would have been

different but for counsel's unprofessional errors. *Id.* "The likelihood of a different result must be substantial, not just conceivable." *Id.* (quoting *Harrington*, 562 U.S. at 112, 131 S.Ct. at 792).

¶ 18 As to Appellant's first contention, we find defense counsel's failure to request an instruction on the defense of duress does not constitute ineffective assistance.[8] Contrary to Appellant's assertion, the evidence presented at trial did not warrant an instruction on his purported defense of duress. Absent Appellant's self-serving testimony that Threadgill forced Appellant at gunpoint to rape D.P., the record is devoid of evidence supporting Appellant's claim of duress. *Cf. Cipriano v. State*, 2001 OK CR 25, ¶¶ 22, 25–26, 32 P.3d 869, 875–76 (defendant's self-serving statements alone insufficient to support the giving of requested misdemeanor-manslaughter instruction). Indeed, Appellant's testimony was inconsistent with other evidence presented at trial. Appellant testified the screen was already off D.P.'s window; yet, Appellant's knife and knife sheath were found outside D.P.'s apartment window. Additionally, Appellant's testimony that Threadgill was holding a gun to his head is incompatible with evidence that Appellant was not only able to get sexually aroused under this alleged stress, but was able to ejaculate. D.P.'s testimony too did not indicate the presence of a second person in her apartment during the attack.

¶ 19 Appellant's assertion at trial that he had no other alternative but to rape D.P. in order to "save her life" is both far-fetched and unpersuasive given Appellant had other legal options available to him short of raping D.P. *See Coleman v. State*, 1988 OK CR 143, ¶ 4, 760 P.2d 196, 197 (instruction on duress not warranted given defendant had reasonable, legal alternatives available to him apart from committing the crime). One such option being that Appellant could have fled rather than jump through the window "out of [his] instincts." *Hawkins v. State*, 2002 OK CR 12, ¶ 30, 46 P.3d 139, 146 ("[A] person who fails

---

**8.** Appellant asserts too in Proposition III that the trial court erred when it failed to instruct the jury on Appellant's sole defense of duress.

to avail himself of an opportunity to escape from a situation of duress is not entitled to claim the defense."). Thus, we find the evidence was insufficient to raise the defense of duress and defense counsel's failure to request a jury instruction on this defense does not constitute deficient performance. *Logan v. State*, 2013 OK CR 2, ¶ 11, 293 P.3d 969, 975 ("The omission of a meritless claim … cannot constitute deficient performance; nor can it have been prejudicial."); *see also Eizember v. State*, 2007 OK CR 29, ¶ 155, 164 P.3d 208, 244 (holding counsel was not ineffective for failing to request a jury instruction which was not warranted by the evidence as any request for the instruction would have been overruled); *Bland v. State*, 2000 OK CR 11, ¶ 113, 4 P.3d 702, 731 (when jury instructions are not supported by the evidence, "defense counsel's failure to request the instructions[ ] d[oes] not constitute ineffective assistance.").

█ ¶ 20 With regard to Appellant's second contention, in Proposition I we found constitutional error occurred when the prosecutor argued Appellant had abused the legal system by going to trial, rather than plead guilty. We concluded this error was harmless beyond a reasonable doubt as to the jury's findings of guilt. As to the balance of Appellant's prosecutorial misconduct claims, we similarly found that any instances of error, identified or assumed, were also harmless as to the jury's guilt determinations. Thus, this claim can be disposed of on the ground of lack of prejudice with regard to the jury's findings of guilt. *Bland*, 2000 OK CR 11, ¶ 113, 4 P.3d at 731. The remainder of this claim is rendered moot by the Court's Proposition I determination that Appellant's sentences must be vacated and the matter remanded for resentencing.

█ ¶ 21 Appellant's final two contentions—each claiming counsel was ineffective for failing to object to certain evidence—can likewise be disposed of based on the lack of prejudice. Assuming arguendo error occurred, in view of the overwhelming evidence of Appellant's guilt, Appellant fails to show a reasonable probability of a different outcome with respect to the jury's guilty verdicts but for counsel's alleged deficient performance.

*See Malone*, 2013 OK CR 1, ¶ 16, 293 P.3d at 207. Hence, given no prejudice was shown as to the jury's findings of guilt and the matter is being remanded for resentencing, trial counsel cannot be found to have been ineffective. *Id.* Proposition II is denied.

### III. Failure to Instruct on Defense of Duress.

█ ¶ 22 In his third proposition of error, Appellant argues the trial court erred when it failed to properly instruct the jury on his sole defense of duress. Appellant did not object to the instructions given at trial and did not request an instruction encompassing the defense of duress. Thus, Appellant has waived on appeal all but plain error review of this claim. *See Mitchell*, 2016 OK CR 21, ¶ 24, 387 P.3d at 943 (failure to object to instructions given waives all but plain error review). "Jury instructions are within the discretion of the trial court, and we review for abuse of discretion." *Id.* (citing *Burgess v. State*, 2010 OK CR 25, ¶ 20, 243 P.3d 461, 465). Instructions are sufficient where they accurately state the applicable law. *Reed v. State*, 2016 OK CR 10, ¶ 15, 373 P.3d 118, 122.

¶ 23 As determined above in relation to Appellant's Proposition II claim asserting ineffective assistance of counsel, the evidence presented at trial did not warrant an instruction on his purported defense of duress. *See Hawkins*, 2002 OK CR 12, ¶ 28, 46 P.3d at 145 (the defense of duress requires the defendant to have committed a prohibited act or omission because of a reasonable belief that there was imminent danger of death or great bodily harm from another upon oneself, one's spouse, or one's child) (quotation and citation omitted); 21 O.S.2011, § 156. Thus, the trial court's failure to instruct, *sua sponte*, on the defense of duress was not an abuse of discretion. *Cf. Cipriano*, 2001 OK CR 25, ¶¶ 22, 25–26, 32 P.3d at 875–76 (defendant's self-serving statements alone found to be insufficient to support the giving of requested instruction). Having failed to show actual error, plain or otherwise, Appellant's Proposition III is denied.

## IV. Sex Offender Registration Instruction.

¶ 24 In his fourth proposition of error, Appellant claims the trial court erred in failing to instruct the jury that if convicted, Appellant would be required to register as a convicted sex offender under Oklahoma law. As Appellant failed to object to the instructions as given and failed to request any instruction on sex offender registration, we review this claim for plain error. *Mitchell*, 2016 OK CR 21, ¶ 24, 387 P.3d at 943. This Court rejected this very claim in *Reed*, 2016 OK CR 10, ¶¶ 14–19, 373 P.3d at 122–23. For the same reasons stated therein, Appellant's Proposition IV is denied.

## V. Excessive Sentence.

¶ 25 In his fifth proposition of error, Appellant argues his sentences are excessive. Appellant's claim is rendered moot by this Court's Proposition I finding of plain error requiring Appellant's sentences be vacated and the matter remanded for resentencing.

## VI. Cumulative Error.

¶ 26 In his sixth and final proposition of error, Appellant alleges that the accumulation of error deprived him of a fair trial. Having found plain error requiring Appellant's sentences be vacated and the matter remanded for resentencing, we limit our review of Appellant's cumulative error claim to the issues remaining that relate to the jury's guilt-innocence determinations. Upon review, we find relief is unwarranted as this is not a case where, considered together, the instances of error we have identified or assumed to exist affected the jury's findings of guilt. *See Baird v. State*, 2017 OK CR 16, ¶ 42, 400 P.3d 875, 886 (a defendant is not denied a fair trial when the errors considered together do not affect the outcome of the proceedings). Proposition VI is denied.

## DECISION

¶ 27 The judgments of the district court are **AFFIRMED**. Appellant's sentences are **VACATED** and the matter **REMANDED FOR RESENTENCING**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2017), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

LUMPKIN, P.J.: CONCUR

LEWIS, V.P.J.: CONCUR

KUEHN, J.: CONCUR